AYRES, Judge.
This is an action upon an automobile insurance policy as its provisions relate to the loss or damage caused by fire. Damages sustained to the automobile allegedly aggregated $427.30. Of this sum, $150.39 was admittedly caused by fire. Defendant contends that the remaining damage was attributable to a mechanical breakdown or failure not covered by the policy. Plaintiff was awarded judgment for only the amount of damage concededly caused by fire. From this judgment he appealed.
Under the insuring clause of the policy, the defendant insurer was obligated “To pay for loss caused other than by collision to the owned automobile or to a non-owned automobile. For the purpose of this coverage, * * * fire * * * shall not be deemed to be loss caused by collision.” The exclusionary clause provides: “This policy does not apply under Part III [with respect to physical damage]: * (e) to damage which is due and confined to * * * mechanical * * * breakdown or failure * *
Plaintiff contends that the burden was upon defendant to establish that the loss in controversy falls within the exclusionary clause of the policy, and, moreover, that defendant has not sustained that burden. The basis of this contention is that the automobile was being driven and had become overheated because only one or two quarts of water were in the car’s 18-quart-capacity radiator. The crucial question, therefore, is whether the proof established that the damage was “due and confined to" a mechanical breakdown or failure of the automobile.
On the occasion immediately preceding the fire in plaintiff’s automobile on January 3, 1969, Mrs. Cone, plaintiff’s wife, drove the family automobile from plaintiff’s place of business on East Union Street, in Minden, over a route which took her to the Gibson store, where she shopped briefly, then to her home between the Gibson store and downtown Minden where 15 minutes or more were consumed in eating lunch. From there, she drove to and entered a line of cars at the drive-in window of a bank which was located in the downtown area of the city. This route covered approximately seven miles. While her car was in line at the bank a pedestrian, Jack Batton, saw smoke coming from underneath the hood of the Cone automobile. This fact was called to the attention of Mrs. Cone and it was suggested that she drive to a nearby service station where her car might be checked. Mrs. Cone then drove approximately two blocks and turned into a service station across the street from the Webster Parish Courthouse. Thereupon she stopped and turned off the car’s ignition.
An attendant, seeing a large amount of smoke emerging from the car, pushed the car away from the gasoline pumps. This attendant, upon raising the hood of the automobile, saw fire in front of the dashboard or fire wall of the car. He described this fire as coming from within the filler tube of the transmission housing. The fire department was called and the fire extinguished. The car was subsequently transferred to a motor company where the damage was estimated and repaired.
L. L. Tyler, of the Ark-La-Tex Appraisal Service, appraised the damage on behalf of the defendant. His appraisal listed items damaged by the fire aggregating $150.39. These items were located outside the transmission housing. Tyler testified that he inspected the transmission; that it had not been burned but had been subject *622 ed to tremendous heat and was damaged because of overheating. No damage to the engine was found. The transmission was described as having two openings — a filler tube in which to add oil and a vent to release heat. Tyler attributed the overheating of the transmission to the lack of water in the radiator. This overheating was said to have caused the damage to the transmission. He stated that under these conditions the transmission oil would become overheated to the point that it would dissolve metal and cause parts to expand. In Tyler’s opinion, this greatly overheated transmission caused the oil and other accumulations on the outside of the housing to ignite, producing the fire and causing the damage outside the transmission. His opinion was that the outside fire could not have caused the heat inside the transmission; that, for such to have resulted, it would have been necessary that there be a terrific fire on the outside of the transmission housing to damage the transmission itself. The witness testified that when the transmission is operating air cannot get inside the housing, so there could be no sustained fire inside a transmission. The pressure inside the housing exceeding the normal outside pressure, as a physical fact it would have been impossible for fresh outside air and oxygen to have entered the transmission housing. To this witness, the transmission dipstick looked normal.
Harold Hataway, service manager of the motor company to which the car was taken for repairs, testified with respect to such repairs. It was necessary that the transmission be replaced. There was internal damage to the clutch, seals, and practically all moving parts in the transmission. These parts had a bluish or grayish color, described by him as having the appearance of having been damaged in a fire. The radiator was drained in his presence. He testified there was a quart or quart-and-a-half of water drained from the radiator. No damage was found to have been done to the motor itself. He testified the transmission fluid had definitely been burned and the interior parts had the appearance, as heretofore noted, of having been burned, but the witness could not say whether this was caused by flame or heat.
Huey Clement, an employee of the service station to which Mrs. Cone drove the car, testified he saw fire coming out of the filler tube of the transmission. How this was possible with the dipstick in position, closing or capping the filler tube, was not explained. T. C. Bloxom, Jr., assistant fire chief, testified that, on arriving at the service station, smoke was boiling up from around the fire wall, but he saw no flame. He said the transmission dipstick, when pulled from the transmission, was charred as though it had been burned.
Bill Sibley, another employee of the motor company repairing the car, testified he removed and dismantled the transmission; that the fluid was black and burned but was in the normal amount. The transmission housing appeared to have experienced extreme heat inside. He was unable to testify whether there was a flame inside the transmission.
Leo Elshout, a self-employed mechanic, testified that the fire could have been within the transmission housing. Whether or not there could be a sustained fire inside a transmission was not made clear by his testimony.
The trial court, after hearing the witnesses and reviewing their testimony, expressed the opinion that the preponderance of evidence established the damage to the transmission was due to overheating because of an insufficient supply of water in the radiator. The evidence that there was only a quart or a quart-and-half of water in the radiator is undisputed.
The testimony as to whether there was a fire inside the transmission or in fact whether a fire could be sustained therein is contradictory. The court held since there was an insufficient quantity of water in the radiator, the testimony of defendant’s witnesses was more reasonable. The essence of their testimony indicated the damage to the transmission was not caused by *623 the external fire nor by internal fire but was due to a lack of water in the radiator and the consequent overheating of the transmission oil to such a degree that the internal parts were damaged. From the enormous amount of heat shown to have been sustained in the transmission and by the transmission housing, the court concluded the oily accumulations on the housing became ignited and caused the damage sustained outside the housing. Thus the trial court concluded, and with this conclusion we find ourselves in accord, that defendant sustained its burden of proof and established that the damage done to the transmission was caused not by the fire but by overheating. Of itself, the fire was inadequate to create heat of sufficient intensity to cause the damage sustained by the transmission.
Our review of the record has not disclosed any error of the trial court to which we could point with any degree of satisfaction. From our review, we are convinced of the correctness of its conclusions. Hence, the judgment appealed is affirmed at plaintiff-appellant’s costs.
Affirmed.